United States District Court
Southern District of Texas
**ENTERED**
October 14, 2016
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| STEVEN A. CALDERONE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-3699 |
| | § | |
| SONIC HOUSTON JLR, LP, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Steven A. Calderone, a car salesman, sued his former employer, Sonic Houston, the owner of the car dealership where he worked. (Docket Entry No. 23). Mr. Calderone alleged that during his employment, Sonic Houston refused to extend financing for, or sell cars to, customers who were otherwise qualified but who were members of racial minorities. (*Id.*). Mr. Calderone alleged that he complained about the discrimination and was fired in retaliation. (*Id.*). He asserts a retaliation claim under the Consumer Financial Protection Act, 12 U.S.C. § 5567, and a race-discrimination claim under 28 U.S.C. § 1981, and seeks compensatory and punitive damages. (*Id.*).

Sonic Houston moved to dismiss Mr. Calderone's retaliation claim under Rule 12(b)(6), or alternatively, under Rule 56. (Docket Entry No. 11). Sonic Houston contends that it cannot be liable under the Consumer Financial Protection Act because it excludes auto dealerships from the jurisdiction or enforcement authority of the Consumer Financial Protection Bureau. (*Id.*). Mr. Calderone responds by arguing that Sonic Houston falls within the exception to the auto-dealership exclusion because it financed the cars it sold. (Docket Entry No. 12). He alternatively argues that even if Sonic Houston is not covered by the Act, he reasonably believed that it was covered. (*Id.*).

Based on the pleadings, the motions and responses, the arguments of counsel presented in a hearing as well as in their briefs, and the applicable law, the court grants Sonic Houston's motion for summary judgment as to the Consumer Financial Protection Act retaliation claim, making the dismissal motion moot as to that claim. (Docket Entry No. 11). The court previously dismissed the § 1981 claim with leave to amend, which Mr. Calderone has done. The court dismissed the *Sabine Pilot* claim with prejudice and without leave to amend, because the alleged illegal act Calderone asserts he refused to perform did not carry criminal penalties and Mr. Calderone's refusal to participate in the discriminatory practices was not the sole reason for his termination.

The reasons for the ruling on the Consumer Financial Protection Act is stated below.

I.    **Background**[1]

From October 2013 to September 2014, Mr. Calderone sold cars at a dealership owned by Sonic Houston. (Docket Entry No. 23 at ¶ 9, 37). Mr. Calderone alleged that during his employment, Sonic Houston supervisors and managers refused to allow him and other sales representatives to obtain financing for minority customers who qualified for the loans and who were members of racial minorities. (*Id.* at ¶¶ 15–20). Mr. Calderone alleged that even if minority customers could get their own financing, Sonic Houston's management refused to sell them cars. (*Id.* at ¶¶ 15–18). Mr. Calderone specifically identified two minority customers who wanted to buy cars with their own financing but could not because Sonic Houston supervisors and managers denied

---

[1]  The court is considering this as a motion for summary judgment. The factual summary is taken from the complaint and from summary judgment evidence in the record, including the affidavit of Frank Pecka, Sonic Houston's finance manager, explaining how the dealership arranges for third-party lenders to finance the vehicles Sonic Houston sells. (Docket Entry No. 5, Ex. A).

approval.  (*Id.* at ¶¶ 15–20).  Two other minority customers agreed to buy cars, but Sonic Houston allegedly refused to approve them to obtain financing for the purchases.  (*Id.*).

Mr. Calderone alleged that he confronted several supervisors and managers about the discrimination.  These included the new-car director, Dwayne Flynn, and the finance manager, Frank Pecka.  (*Id.* at ¶¶ 21–22).  Mr. Flynn allegedly responded by lunging at Mr. Calderone with a raised fist.  (*Id.* at ¶ 21).  Mr. Calderone then went to Mr. Pecka, who identified the general manager, A.J. Giblin, as the one deciding whether the dealership would sell a car to a given customer.  (*Id.* at ¶ 22).  Mr. Calderone reported the discriminatory practices and what happened at the meetings with Mr. Flynn and Mr. Pecka to Marlena Warthan, a human-resources employee at the dealership.  (*Id.* at ¶ 23).  He also drafted a report about the incidents.  (*Id.*).  The next day, Mr. Giblin, the general manager, came to Mr. Calderone to retrieve the file for a rejected sale to a minority customer.  (*Id.* at ¶ 24).  At Ms. Warthan's instruction, Mr. Calderone refused to hand over the file, and Mr. Giblin told him to go home.  (*Id.*).

Mr. Calderone met with Ms. Warthan about his complaint against Mr. Flynn.  (*Id.*).  Mr. Calderone again emphasized that he believed that certain sales had not occurred because of racial discrimination.  (*Id.* at ¶ 26).  Ms. Warthan called Mr. Flynn into the meeting and described the racial discrimination Mr. Calderone had reported.  (*Id.*).  Mr. Giblin was then called into the meeting and given the same report.  (*Id.*)  Mr. Calderone was asked to leave the meeting.  (*Id.*).

Mr. Calderone alleged that the dealership began to build a fictitious case for terminating him in retaliation for reporting the racially discriminatory practices.  (*Id.* at ¶ 33).  He alleged that the dealership, among other things, paid "mystery shoppers" to give Mr. Calderone poor performance reviews.  (*Id.* at ¶¶ 42–43).  Mr. Calderone was terminated based on these bad reviews and on insubordination.  (*Id.* at ¶¶ 39–40).  Mr. Giblin was also terminated.  (*Id.* at ¶ 37).

This memorandum and opinion addresses the retaliation claim under § 5567(a).  The § 1981 claim is not addressed and remains in the case.

## II.  The Legal Standards under Rule 12(b)(6) and Rule 56

In considering a Rule 12(b)(6) motion to dismiss, the court is generally limited to the allegations on the face of the complaint.  To the extent a Rule 12(b)(6) motion or response relies on matters outside the pleadings, the court may either ignore those additional data or to treat the motion "as one for summary judgment under Rule 56."  FED. R. CIV. P. 12(d).  In support of its motion, Sonic Houston attached an affidavit from Mr. Pecka describing how Sonic Houston is involved in customer financing to purchase vehicles.  (Docket Entry No. 5, Ex. A).  Because this court considers the affidavit in its ruling, the motion is properly considered as one for summary judgment.  FED. R. CIV. P. 12(d).

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'"  *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

4

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325.   Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).   "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).   "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the nonmoving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694).   The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).   "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).   In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

## III.    Discussion

The Consumer Financial Protection Act established an independent entity within the Federal Reserve System called the Bureau of Consumer Financial Protection.  The Bureau was authorized to promulgate regulations to enforce "enumerated consumer laws," including the Equal Credit Opportunity Act.  That Act makes it unlawful for any creditor to discriminate against any credit applicant on the basis of race, color, religion, national origin, sex, marital status, or age (provided that the applicant has the capacity to contract).  15 U.S.C. §1691(a)(1).

The Consumer Financial Protection Act's antiretaliation provision states, in pertinent part:

(a) No covered person or service provider shall terminate or in any other way discriminate against, or cause to be terminated or discriminated against, any covered employee or any authorized representative of covered employees by reason of the fact that such employee or representative, whether at the initiative of the employee or in the ordinary course of the duties of the employee (or any person acting pursuant to a request of the employee), has–

(1) provided, caused to be provided, or is about to provide or cause to be provided, information to the employer, the Bureau, or any other State, local, or Federal, government authority or law enforcement agency relating to any violation of, or any act or omission that the employee reasonably believes to be a violation of, any provision of this title or any other provision of law that is subject to the jurisdiction of the Bureau, or any rule, order, standard, or prohibition prescribed by the Bureau;

12 U.S.C. § 5567(a).  Mr. Calderone contends that Sonic Houston's actions violated the Equal Credit Opportunity Act, which is within the Bureau's jurisdiction.  Sonic Houston raises the Consumer Financial Protection Act's exclusion of certain entities from the Bureau's jurisdiction.  The Consumer Financial Protection Act's exclusion provision states:

(a) Sale, servicing, and leasing of motor vehicles excluded

Except as permitted in subsection (b), the Bureau may not exercise any rulemaking, supervisory, enforcement or any other authority, including any authority to order assessments, over a motor vehicle dealer that is predominantly engaged in the sale and servicing of motor vehicles, the leasing and servicing of motor vehicles, or both.

6

12 U.S.C. § 5519(a).  There is an exception to the auto-dealer exclusion:

> Subsection (a) shall not apply to any person, to the extent that such person–
> ...
> (2) operates a line of business–
>> (A) that involves the extension of retail credit or retail leases involving motor vehicles; and
>> (B) in which–
>>> (i) the extension of retail credit or retail leases are provided directly to consumers; and
>>> (ii) the contract governing such extension of retail credit or retail leases is not routinely assigned to an unaffiliated third party finance or leasing source . . . .

12 U.S.C. § 5519(b).  Mr. Calderone argues that the Act covers his claim because Sonic Houston extends financing to its customers, or that he at least reasonably believed that the Act covered his claim.

Sonic Houston does not fall within the exception to the auto-dealer exclusion.  Sonic Houston presents an undisputed affidavit, (Docket Entry No. 5, Ex. A), showing that it does not provide financing directly to customers.  12 U.S.C. § 5519(b)(2)(B)(i–ii).  Instead, it helps prepare and send customers' financing applications to unaffiliated third-party lenders for the lenders to review and to make the financing decisions.  (*Id.*).

Although there are no cases on point that the parties cited, the legislative history shows that the exception to the auto-dealership exclusion covers auto dealers that do not themselves provide financing.  The House member offering the amendment containing the relevant language stated that "automobile dealers, in the normal course of their business, do not lend money and are not financial institutions and should not be subject to the additional regulation of the CFPA.  If, however, they do lend money and act like financial institutions, then they will be subject.  That is what the bill says." 155 Cong. Rec. H14747-04, 2009 WL 4729710, at *H14751 (Dec. 11, 2009).  Senator Sam

Brownback offered the same amendment in the Senate and made a similar statement: "If you actually loan the money . . . you are under the CFPB. If you are simply the retail storefront, which is what the auto dealers are, you are not covered under the Consumer Financial Protection Bureau. . . . If you are an auto dealer and you make the actual loan yourself and it is your money you are lending, you are covered. . . . 100 percent of auto loans will still be covered.  It is just the auto dealership will not be the one that is covered, the upstream financier will . . . ."[2] 156 Cong. Rec. S4130-01, 2010 WL 2035460, at *S4131 (May 24, 2010).  The statute's language and the legislative history make it clear that the exception to the auto-dealership exclusion does not apply to a dealership like Sonic Houston, which brokers loans for customers from unaffiliated third parties.

Mr. Calderone's claim that he reasonably believed that Sonic Houston was an entity covered under the Act's protections is unpersuasive.  The undisputed facts show that the Act does not apply to the dealership as a matter of law.  *See Murray v. UBS Securities, LLC*, 2015 WL 769586, at *5–*6 (S.D. N.Y. Feb. 24, 2015).  When, as here, a statute does not apply to the defendant as a matter of law, a plaintiff's belief to the contrary, however sincere, is not "reasonable" within the meaning of the case law.  The analysis under Title VII is similar.  *See, e.g., Wilson v. Delta State Univ.*, 143 F. App'x 611, 613–14 (5th Cir. 2005) (when conduct does not violate Title VII as a matter of law, the plaintiff's alleged belief to the contrary could not have been reasonable); *Kummerle v. EMJ Corp.*, No. 3:11-cv-2839-D, 2012 WL 2995065, at *4 (N.D. Tex. July 23, 2012) ("A plaintiff's belief is not objectively reasonable if the law is settled that the employment practice . . . is not unlawful under

---

[2]  Mr. Calderone argues in supplemental briefing that the Bureau's website shows that the Act covers Sonic Houston because consumers can report complaints about vehicle loans. (Docket Entry No. 31).  As shown by the legislative history, there was never any question that vehicle loans were covered under the Act.  The exclusion covers auto dealerships that,  like Sonic Houston, do not loan the money or otherwise act as financial institutions.

Title VII.").  Mr. Calderone could not have held a "reasonable belief" that Sonic Houston violated the Equal Credit Opportunity Act's protections when Sonic Houston itself is excluded from the Bureau's jurisdiction[3] and enforcement authority.

## IV.    Conclusion

Sonic Houston's motion for summary judgment on the §5567 retaliation claim is granted. (Docket Entry No. 11).  The § 1981 claim remains.

SIGNED on October 14, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[3]  Mr. Calderone argues in supplemental briefing that Sonic Houston falls within the Bureau's jurisdiction because it is subject to the enumerated consumer laws listed in 12 U.S.C. § 5481(12).  (Docket Entry No. 30).  That list specifically notes that it is subject to the auto-dealership exclusion.  12 U.S.C. § 5481(12) ("Except as otherwise specifically provided in section 5519 of this title . . .").   Nor does Sonic Houston's compliance with other federal laws subject it the jurisdiction of the Bureau.  *See* 15 U.S.C. § 6804 (the Bureau does not have authority to prescribe regulations under the Graham-Leach-Billey Act, which requires Sonic Houston to maintain an information security policy).