United States District Court
Southern District of Texas
**ENTERED**
December 21, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEVEN A. CALDERONE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-15-3699 |
| § | |
| SONIC HOUSTON JLR, LP, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

Steven A. Calderone, a car salesman, sued his former employer, Sonic Houston, which owned the car dealership where he worked. (Docket Entry No. 23). Calderone alleged that during his employment, Sonic Houston refused to extend financing for, or sell cars to, customers who were otherwise qualified but who were racial minorities. (*Id.*). Calderone alleged that he complained about the discrimination and was fired in retaliation. (*Id.*). After discovery and motions, this court dismissed all Calderone's claims except his claim for race discrimination under 42 U.S.C. § 1981. (Docket Entry No. 23).

Sonic Houston has moved to dismiss Calderone's § 1981 claim and to compel him to arbitrate it. Sonic Houston invokes two separate arbitration agreements that Calderone signed, one when he applied for employment and one shortly after he began working. (Docket Entry No. 35). Calderone responds by arguing that because the Federal Arbitration Act excludes "transportation workers," his work as a car salesman means that he is not covered by the Act. (Docket Entry No. 36). He alternatively argues that even if the Act applies, Sonic Houston has waived its right to invoke the arbitration agreement. (*Id.*). Sonic Houston has replied. (Docket Entry No. 37).

Based on the pleadings, the motions and responses, and the applicable law, the court grants Sonic Houston's motion to dismiss and to compel arbitration. (Docket Entry No. 35). Because the remaining claim is subject to arbitration, the dismissal is a final judgment. The reasons for the ruling are stated below.

## I.     Background

From October 2013 to September 2014, Calderone worked as a salesman at a Sonic Houston car dealership. (Docket Entry No. 23 at ¶ 9, 37). In this lawsuit, Calderone alleged that during his employment, Sonic Houston supervisors and managers refused to allow him and other sales representatives to obtain financing for minority customers who qualified for the loans. (*Id.* at ¶¶ 15–20). Calderone alleged that even if minority customers could get their own financing, Sonic Houston's management refused to sell them cars. (*Id.* at ¶¶ 15–18). Calderone specifically identified two minority customers who wanted to buy cars with their own financing but could not because Sonic Houston supervisors and managers denied approval. (*Id.* at ¶¶ 15–20). Two other minority customers agreed to buy cars, but Sonic Houston allegedly refused to approve them to obtain financing for the purchases. (*Id.*).

Calderone signed an arbitration agreement as part of his employment application at Sonic Houston in September 2013. (Docket Entry No. 35, Ex. 1). He electronically signed another arbitration agreement in October 2013. (*Id.*, Ex. 2). In signing, he agreed "to resolve any and all claims, disputes or controversies arising out of or relating to this application for employment and employment relationship exclusively by final and binding arbitration." (*Id.*, Exs. 1–2).

The issues are whether Calderone's employment at Sonic Houston is exempt from the Federal Arbitration Act because he was a "transportation worker" under Section 1, and, if not,

2

whether Sonic Houston's litigation conduct waived its right to invoke arbitration under the agreement.

## II.     The Legal Standard for a Motion to Compel Arbitration

District courts must enforce valid arbitration agreements under the Federal Arbitration Act, 9 U.S.C. § 2. Under the Act, federal courts first determine whether a valid agreement to arbitrate exists and, if so, whether it covers the parties' disputes. *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 452 (2003); *Tittle v. Enron Corp.*, No. 05-20380, 2006 WL 2522444, at *6 (5th Cir. Sept. 1, 2006) (quoting *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996)). "Generally under the FAA, state law governs whether a litigant agreed to arbitrate, and federal law determines the scope of the arbitration clause." *In re Weekley Homes*, 180 S.W.3d 127 (Tex. 2005); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077–78 (5th Cir. 2002), *opinion supplemented on denial of rehearing*, 303 F.3d 570 (5th Cir. 2002) (same). These are generally issues for the courts to decide. *Green Tree,* 539 U.S. at 452. Questions of contract interpretation relevant to these issues are decided under "ordinary state-law principles that govern the formation of contracts." *Webb*, 89 F.3d at 258 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

If there is a binding agreement to arbitrate, the court then decides whether the agreement covers the parties' dispute. *Green Tree,* 539 U.S. at 452; *Tittle*, 2006 WL 2522444, at *6. Once a valid arbitration agreement is found, the Act's "strong national policy favoring arbitration of disputes" applies, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Group, L.L.C. v. Bailey,* 364 F.3d 260, 263 (5th Cir. 2004) (quotations omitted); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). The duty to arbitrate

3

remains one of contract; a court cannot compel parties to arbitrate issues they have not agreed to submit. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

**III.     Discussion**

As a threshold issue, Calderone argues, without citing authority, that both arbitration agreements were "illusory and unconscionable" because "[t]he only consideration given or received for either agreement was his employment." (Docket Entry No. 36 at 2). This is not a valid argument under Texas state law. *See First Options of Chicago*, 514 U.S. at 944 (in deciding this question, courts apply "ordinary state-law principles that govern the formation of contracts"). In Texas, "[m]utual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement." *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010); *see Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 203 (5th Cir. 2016) ("The law [in Texas] allows an employer to impose an arbitration agreement as a term of continued employment so long as it provides notice of the policy.") (citing *In re Halliburton Co.*, 80 S.W.3d 566, 568–69 (Tex. 2002)). Because both the employment application and posthiring agreement include a mutual agreement to arbitrate, the court finds there is a valid arbitration agreement. (Docket Entry No. 35, Exs. 1–2).

Calderone does not dispute that the broad arbitration agreement encompasses his race-discrimination claim. Instead, he contends that as a car salesman whose job including picking up the cars from their point of delivery and driving them to the dealership for the customers, he is excluded from the Arbitration Act's coverage and the arbitration agreement is not enforceable against him. Section 1 of the Act exempts from arbitration "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Calderone contends that he falls under the exclusion because he sold cars that were

4

shipped from England to Houston and delivered cars to the customer at the dealership. (Docket Entry No. 36 at 3, Ex. A).

The Fifth Circuit has held that "the exclusionary clause of Section 1 of the Arbitration Act should be narrowly construed to apply to the employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 748 (1996). The Fifth Circuit "noted that it would be impossible to use a broader definition of 'commerce' in the clause 'and not rob the rest of the exclusion clause of all significance.'" *Tran v. Texan Lincoln Mercury, Inc.*, No. CIV.A. H-07-1815, 2007 WL 2471616, at *4 (S.D. Tex. Aug. 29, 2007) (quoting *Rojas*, 87 F.3d at 748). "As the Supreme Court has held, the exclusionary clause of Section 1 of the FAA was meant to exclude specific workers—those in the transportation industry with a 'necessary role in the free flow of goods'—for whom Congress had established or was developing specific statutory dispute resolution schemes." *Id.* (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001)).

Applying these principles, this court has rejected Calderone's argument in *Tran v. Texan Lincoln Mercury, Inc.*, 2007 WL 2471616 (S.D. Tex. Aug. 29, 2007). In *Tran*, the plaintiff was a finance manager at a car dealership and alleged race discrimination. *Id.* at *1. This court rejected the plaintiff's argument that he was a "transportation worker" under the FAA. *Id.* at *5. "A transportation worker is someone who works in the transportation industry—an industry whose mission it is to move goods. In contrast, [the plaintiff] worked in the automobile industry—an industry who mission it is to manufacture and sell automobiles." *Id.* The plaintiff's duties involved selling cars and arranging car loans, not transporting goods on behalf of a carrier. *Id.*

5

Calderone cites no cases in which a court has found that a car-dealership salesman qualifies as a "transportation worker" within the meaning of Section 1. To the contrary, courts routinely enforce arbitration agreements signed by car-dealership employees under the Act. *See, e.g.*, *Drawdy v. Don Jackson Chrysler Dodge Jeep, Inc.*, No. 114CV03490WSDWEJ, 2015 WL 12591774, at *3 (N.D. Ga. Feb. 5, 2015) ("A car salesman like plaintiff is not actually engaged in transportation of goods in commerce."); *Figueroa v. W-W Automobiles, Inc.*, No. 402CV201DB, 2002 WL 31992188 (N.D. Miss. Nov. 5, 2002) (compelling a car salesman to submit to arbitration with his car-dealership employer). Calderone's employment at Sonic Houston was not exempt under the Federal Arbitration Act.

Calderone's argument that Sonic Houston has waived its right to compel arbitration is also unpersuasive. Calderone contends that Sonic Houston's motions to dismiss his nonarbitrable Consumer Financial Protection Act claim without seeking to compel arbitration constitutes waiver. (Docket Entry No. 36 at 5–10). Litigation conduct, including filing dispositive motions, can waive the right to invoke arbitration, but only "when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991). There is a "strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden." *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004).

Calderone asserted a retaliation claim under the Consumer Financial Protection Act, and, in an amended complaint, added a *Sabine Pilot* claim that he had been fired in retaliation for refusing to perform an illegal act. (Docket Entry No. 1 at ¶¶ 7, 10; Docket Entry Nos. 7, 8). The Consumer Financial Protection Act excludes arbitration to resolve claims under that statute. *See* 12 U.S.C. §

5567(d)(1)–(2).  Sonic Houston's first motion to dismiss addressed only this claim.  After Calderone responded by adding the *Sabine Pilot* claim, Sonic Houston filed an amended motion to dismiss both the Consumer Financial Protection Act and *Sabine Pilot* claims.[1]  (Docket Entry No. 20).  Moving to dismiss nonarbitrable claims does not waive the right to seek arbitration of a claim that is arbitrable.  *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328 (5th Cir. 1999) (a party does not invoke the judicial process if it litigates a nonarbitrable claim against a party with whom it has arbitrable claims).  The court granted the motion to dismiss.  (Docket Entry No. 33).  Sonic Houston then moved to dismiss and compel arbitration of the remaining § 1981 claim.  (Docket Entry No. 35).

"[A] party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate."  *Republic Ins. Co*., 383 F.3d at 344.  Sonic Houston did not so extensively litigate the § 1981 claim so as to waive the right to require Calderone to arbitrate it. Sonic Houston made clear from the outset that it intended to seek arbitration of the § 1981 claim. It asserted arbitration as a defense to the first amended complaint.  (Docket Entry No. 34 at 1); *see Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 F.2d 1140, 1150 (5th Cir. 1985) (no waiver when defendant "raised the defense of arbitration in its answer").  At a hearing in May 2016, Sonic Houston informed the court and opposing counsel that when the case reached the stage of litigating the § 1981 claim, it would seek to dismiss and compel arbitration of that claim.  (Docket Entry No. 18, Tr. 21:6–10 ) (noting that if the court dismissed the CFPA and *Sabine Pilot* claims, Sonic Houston would be "back here in front of [the court] on a motion to dismiss and compel

---

[1] Sonic Houston does not argue that Calderone's *Sabine Pilot* was nonarbitrable.  *See In re NEXT Fin. Grp., Inc.*, 271 S.W.3d 263, 265 (Tex. 2008) ("[T]he employee's *Sabine Pilot* claim falls within the scope of his arbitration agreement and is not subject to an exception limited to statutory employment discrimination claims.").

7

arbitration, which is required based on the agreement that Mr. Calderone signed"). The discovery Sonic Houston conducted was largely at the court's direction and was neither so extensive nor so burdensome as to waive its right to compel arbitration. And, as Sonic Houston notes, the discovery will be useful in the arbitration as well. *Nissho Iwai Corp. v. M/V Joy Sea*, Civil No. 98-1655, 1999 WL 970335, at *4 (E.D. La. Oct. 22, 1999) (The defendants "participation in the litigation did not waive their claims to arbitration because they specifically asserted arbitration as a defense in their answer and their subsequent activities 'were consistent with orderly participation in the lawsuit.' If [the defendants] had acted any differently, they may have prejudiced their position in this case had the Court found the arbitration clause not enforceable.") (quoting *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 929 (5th Cir. 1970)); *see also Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 982–83 (4th Cir. 1985) ("[T]he party seeking arbitration does not lose its contractual right by prudently pursuing discovery in the face of a court-ordered deadline.").

**IV.   Conclusion**

Sonic Houston's motion to dismiss the § 1981 claim and to compel arbitration is granted. (Docket Entry No. 35). Because no claims remain to be litigated, the dismissal is a final judgment, which is entered by separate order.

SIGNED on December 21, 2016, at Houston, Texas.

                                        Lee H. Rosenthal
                                   Chief United States District Judge